UNITED STATES of America, Plaintiff-Appellee,

v.

Percy PRUITT, Defendant-Appellant.
No. 14276.

United States Court of Appeals
Seventh Circuit.
April 9, 1964.

---

KNOCH, Circuit Judge.

Defendant-Appellant, Percy Pruitt, was tried by the Court, jury trial having been waived, on a four-count indictment charging two sales of narcotics, and reception, concealment, etc., of the same narcotics. He was found guilty and sentenced to serve six years on the indictment as a whole.

The federal narcotics agent, William H. Turnbou, who testified that defendant made the two sales of narcotics to him, was introduced to defendant by a special employee. This special employee arranged two meetings between defendant and Agent Turnbou, and was present at one of the meetings. On each occasion, Agent Turnbou delivered sums of money[1] to defendant, who subsequently pointed out a tree and a fence, respectively, from which Agent Turnbou took the narcotics which he had purchased. Each transaction was observed from a distance' by another federal narcotics agent.

Defendant testified that he was hired by the special employee, for very small sums, to act in these two transactions as agent for the special employee, whom he knew only as "Tony." He stated that Tony misled him into believing that the narcotic substances were harmless milk sugar. He attributed the special employee's actions to a desire to revenge himself on defendant because defendant had repossessed an automobile on which Tony had failed to maintain the requisite payments, about a year prior to the events in question. Defendant asserted that except for the small sums paid him for his services, the total purchase price was turned over to Tony.

Defendant contends that the Trial Judge erroneously struck the testimony of two witnesses from the record and declined to hear the testimony of two others after offers of proof had been made.

Leon Mitchell, called as a witness for defendant, testified that he was charged with narcotics violations and that he was awaiting trial in another court. He tes-

John E. McGovern, Jr., Chicago, Ill., for appellant.

Edward V. Hanrahan, U. S. Atty., John Powers Crowley, Chicago, Ill., Frank E. McDonald, Asst. U. S. Atty., John Peter Lulinski, Paul E. Plunkett, Asst. U. S. Attys., of counsel, for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

1. Agent Turnbou testified that he paid $135 and $250. The exact sum was disputed by the defendant, who testified that only $245 was paid at the second sale.

234

tified further that he knew a man named "Tony" whom he described. Defendant offered to prove that Mr. Mitchell's "Tony" was the same man as the special employee with whom defendant had dealt, that Tony had induced Mr. Mitchell to participate in sales of a substance supposedly milk sugar which in fact proved later to be a narcotic drug.

James Palmore, also called as a witness for defendant, testified that he knew "Tony," and had met him on several occasions. Defendant offered to prove three conversations between Tony and Mr. Palmore. In one conversation, Tony had told Mr. Palmore that he could get some "stuff" and arrange for Mr. Palmore to make $25 to $40 per day. Another time Tony had urged Mr. Palmore to assist him in a scheme whereby Tony would pass himself off as a police officer to someone who was dealing in narcotics. In the third conversation, Tony riding in Mr. Palmore's automobile urged him to be very careful observing the traffic laws lest the police stop the car and search them. He did not tell Mr. Palmore what he was carrying but did not deny an accusation that he was carrying narcotics.

The Trial Judge refused to admit this testimony. The Trial Judge also refused defendant's exhibits 3 and 4 which consisted of copies of the motion, suggestions in support of the motion, notice and proof of service, filed in the Mitchell case requesting consolidation of that case with defendant's case, and the proceedings had thereon in the other court.

Inez Collins testified for defendant that she knew a man named "Tony," who came into her restaurant, where defendant was employed as extra help some time early in 1962; that subsequently she spoke to defendant on the telephone when he called one evening in August 1962; that defendant asked her to send her employee, Jack Richardson, down to the pool room to call Tony to the telephone. She had refused to do so. The District Court reserved his ruling on the government's motion to strike this testimony as irrelevant on the promise of defendant's counsel

that the relevancy of the testimony would later be shown.

Jack Richardson testified for defendant that he was a cook at the Collins' restaurant; that he knew both Tony and defendant who was a frequent customer in the restaurant; that he spoke to defendant on the telephone one evening in the spring or summer of 1962; that defendant asked him to go next door to the tavern-pool room and get Tony; that he did not see Tony there, or later, and so was unable to tell him defendant wished to get in touch with him.

The Trial Court subsequently granted the government's motion to strike the testimony of both Mrs. Collins and Mr. Richardson. Defendant argues that this testimony would have corroborated his own testimony that he contacted Tony between the times he met Agent Turnbou and the times he pointed out to Agent Turnbou the locations of the two packages of heroin.

It seems to us that none of this proffered evidence was relevant to the matter on trial. The testimony respecting Leon Mitchell's case falls within no recognized exception to the inadmissibility of evidence of crimes unconnected with the offenses charged in the indictment. We see no abuse of the Trial Court's discretion here.

Defendant's primary concern was the special employee himself. Early in his testimony, Agent Turnbou identified the special employee by name. His current whereabouts were unknown, but the government's witnesses disclosed his last known address and the places where he had been seen. After learning at the trial that the defendant wished to call the special employee as a witness, government agents did make a search for him. Defendant characterizes these efforts as inadequate. The search was unsuccessful, but a search was made.

The defendant's position is that:

The defendant requested the Government to either produce the special employee or identify him so that subpoena could be served. The Govern-

ment did neither, and the trial court should have dismissed the prosecution. This was error under the rule of the Roviaro case since the Government is under a duty to either produce the special employee or sufficiently identify him so that subpoena may be served on him.

In Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) the Supreme Court held that it was prejudicial error to permit the government to conceal the identity of its informant who was the sole participant other than the accused in the transaction charged. In the case before us, the special employee played a limited part. Unlike the defendant in Roviaro, the defendant here knew the special employee well, had had dealings with him over a long period of time, and had as good an opportunity as the government to make sure of his presence at the trial. His testimony was not needed to prove the government's case. He was sought only to corroborate defendant's special defense, which was unknown to the government prior to the trial. But the government has not sought to withhold any information from the defendant, nor is it suggested that any data has in fact been withheld.

Defendant contends that "identity" of the special employee must include sufficient information for service of a subpoena, that:

The Government must have a duty to retain control over its special employees, or to prove that it has made good faith efforts to obtain specific information about their names, addresses and whereabouts. Otherwise, as far as any practical protection given to defendants is concerned, the language of the Supreme Court will be, in the words of the Bard, "full of sound and fury and signifying nothing."

Defendant considers that the failure to secure information which he charges that the government might have secured with comparatively little effort, while the special employee was still available, has resulted in forcing the defendant to give up his Constitutional privilege against taking the stand. In the absence of the special employee from whom evidence of the milk sugar scheme might have been elicited, defendant argues that he was obliged to testify in his own defense.

We disagree. Roviaro limits, under specific circumstances, the traditional privilege of withholding the identity of the informer. The government in this case has made no attempt to assert its ancient privilege in this regard. Full disclosure of all known information was made. It would be unreasonable to require the government to speculate on the possible needs of the defense, and, at the peril of dismissal of the prosecution, to make advance arrangements to produce without fail witnesses who might never be called.

The judgment of the District Court is affirmed.

The Court wishes to express its appreciation of the skilled services of Mr. John E. McGovern, Jr., of the Illinois bar, as Court-appointed counsel for appellant. His presentation in briefs and oral argument of the points here involved was excellent.

Affirmed.